VANDEN HOEK *v.* PEARCE.

NEW TRIAL—MISTAKE IN TESTIMONY ON CONTROLLING FACT REQUIRES NEW TRIAL.

> Where uncontroverted affidavits and documentary proof attached thereto, filed in support of a motion for a new trial, clearly show that an unintentional mistake was made by plaintiff in his testimony in fixing a date which is decisive of his right to recover, a new trial should have been granted by the trial judge, in the exercise of his discretion.[1]

Error to superior court of Grand Rapids; Verdier (Leonard D.), J. Submitted January 8, 1925. (Docket No. 58.) Decided April 3, 1925.

Assumpsit by Samuel Vanden Hoek against Peter D. Pearce for money obtained by fraud. Judgment

---

[1]New Trial, 29 Cyc. p. 868.

for defendant on a directed verdict.    Plaintiff brings
error.    Reversed.

*Dorr Kuizema,* for appellant.

*Rodgers & Rodgers,* for appellee.

SHARPE, J.    By written agreement, entered into on
January 25, 1921, plaintiff and defendant became joint
owners of a patent, afterwards secured, for an article
to remove ice cream from containers.    Negotiations
were had looking to the sale of plaintiff's interest.
On January 23, 1922, he gave defendant a 60-day
option to purchase it for $1,000 in cash and $1,000 in
the stock of any company which might be organized
for the purpose of making and selling the patented
article.    When this option expired, defendant sought
another.    He told plaintiff he was negotiating with
some parties in the city, but declined to give their
names, saying that they "did not want to be known."
On April 13th, plaintiff signed an option, good until
April 27th, wherein he agreed to accept $1,000 in
cash for his interest in the patent.    Defendant at
that time stated to plaintiff that $1,000 was all he
could get for it, and said that if he could get more
he would.    Defendant made payments on this option
as follows: April 27th, $75; April 28th, $325; June
8th, $200; June 28th, $250, and gave a note for the
balance of $150.    He had theretofore tried to get
plaintiff to give him an option for $800.    Plaintiff
again asked him the names of the parties he was deal-
ing with, and he declined to give them, saying, "No,
you can't meet these parties, they want to keep it
secret for the present."    He claimed he needed the
option to show to the men with whom he was dealing,
and assured plaintiff that he was getting less money
out of it than plaintiff.    On May 18th, plaintiff signed
a memorandum, reading:

"Agreement.
"*To whom it may concern:*
"My terms are:
"$1,000.00 cash as per our option of April 13, 1922.
          or
"$500.00 cash and stock in the Ice Cream Dipper Company amounting to one-half of the stock that P. D. Pearce gets."

There is no dispute about the fact that defendant secured $1,500 from Harry Nyburg and Henry C. Bursma, the parties with whom he had been negotiating, with which to purchase plaintiff's interest, on the representation that such amount must be paid. Plaintiff further testified:

"After Pearce began paying on the $1,000-option I discovered the real situation. As soon as I discovered it I called Pearce up. Within two weeks after the expiration of the option I found it out. I went to him and told him I didn't think he was treating me fair at all; that I was entitled to that $500 which he got from these other men, and which he misrepresented to me; but he said that I wasn't entitled to that at all. I told him I would tell Mr. Nyburg and Mr. Bursma. He said he didn't care. * * * I told him I learned he had $500 extra and he admitted it. When Mr. Pearce stated to me previously that $1,000 was the most that he could get for me, I believed him, and I signed this option of April 13th on the representations that he made that that was all he could get for me."

On cross-examination, he again stated that he learned about defendant's deal with Nyburg and Bursma "about two weeks after the 27th of April," and he afterwards stated in answer to a question put by the court that the memorandum of May 18th was executed by him after he knew that Pearce had received the $1,500.

Mr. Nyburg, called as a witness for plaintiff, testified that he talked with plaintiff about the matter "two or three weeks after we had closed the deal with

Mr. Pearce." The agreement between them was executed on April 22d. Pearce then told him he must pay plaintiff $1,500 to take up the option.

When the plaintiff rested; the defendant moved for a directed verdict for the reason, among others, that—

"plaintiff ratified the contract he made and entered into a new one of like terms after full knowledge of alleged fraud."

After some discussion, a recess was taken, after which plaintiff's attorney asked permission of the court to offer further testimony relative to the option agreement of May 18th. He admitted that it would be "a repudiation of former testimony," but insisted it would be "for the jury." The court declined to permit this to be done, and directed a verdict for defendant for the reason stated.

After judgment was entered, plaintiff promptly entered a motion for a new trial, based on several affidavits. In plaintiff's affidavit, he stated that on further investigation he found the fact to be that the first information he had of the fraud practiced upon him was in an interview with Mr. Nyburg, who advised him to see Harold W. Bryant, an attorney, and that he did so a few days later. Mr. Bryant in an affidavit fixes the date of this interview from the records in his office as July 13th. In an affidavit made by Nyburg and Bursma they depose that plaintiff's attorney had asked them to look up the date of their disclosure to plaintiff of the fraud practiced upon him by defendant. They state that they each gave a check to defendant on June 10th for a part of the payment to go to plaintiff, and that they then had no knowledge that defendant was paying plaintiff less than $1,500, which canceled checks are attached, and that it was after June 15th that plaintiff called on them and they advised him of the amounts they had paid defendant for plaintiff's interest in the patent.

The facts stated in these affidavits were in no way disputed by defendant. They establish very clearly that plaintiff and Mr. Nyburg were mistaken in their testimony wherein they stated that the fraud was discovered before the option of May 18th was signed by plaintiff. It is apparent that neither the plaintiff nor his counsel, nor Mr. Nyburg, appreciated the importance of fixing the date when plaintiff first learned of the fraud, when these witnesses were examined. When attention was called to the date fixed by plaintiff's witnesses on the motion to direct a verdict, plaintiff's counsel, after conferring with his client, asked leave to submit him to further examination relative thereto. Plaintiff at that time had but concluded his proof, and none had been submitted by defendant. It seems clear to us that had the court been advised as to the proof which plaintiff could then offer, as disclosed in the affidavits referred to, his request would have been granted. He was doubtless impressed that plaintiff should not be permitted to change his testimony to "make out a case." The affidavits filed on the motion for a new trial and the documentary proof attached thereto seem to very clearly show that a mistake in the date was in fact made and that it was unintentional. In 20 R. C. L. p. 227 it is said:

"The court will, in the exercise of its extraordinary discretion, order a new trial in some cases, for the better attainment of justice."

In 29 Cyc. p. 868 it is said:

"That a witness claims to have made a mistake in his testimony is not ordinarily ground for a new trial, especially where the verdict is sustained by other evidence. But where it is clear that a witness was mistaken in giving the only or controlling testimony to a material fact, or that the testimony of witnesses on which the verdict proceeded was founded on particular circumstances which have been clearly

falsified, a new trial should be granted.    It must appear, however, that the mistake was of so important or controlling a character as probably to have affected the verdict."

A similar question has never been presented to this court.    It is difficult to imagine a case in which justice to the parties more strongly demands that plaintiff's proof as outlined in the affidavits should be submitted to the jury than that before us.    While loath to interfere with the discretion exercised by a trial court in denying such a motion, we are impressed that justice requires us to set aside the judgment entered and order a new trial.    The costs of the trial had in the circuit court and of the proceedings in this court will abide the result of such new trial.

McDONALD, C. J., and CLARK, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.